Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey  07962-1991
(973) 292-1700

Attorneys for Plaintiff
NIPPON STEEL CORPORATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIPPON STEEL CORPORATION,<br><br>     Plaintiff,<br><br>     v.<br><br>POSCO and POSCO AMERICA CORPORATION,<br><br>     Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Nippon Steel Corporation ("Plaintiff" or "Nippon Steel"), by way of Complaint against POSCO and POSCO America Corporation (together, "Defendants"), alleges as follows:

**THE PARTIES**

1. Nippon Steel Corporation is a corporation organized and existing under the laws of Japan with its corporate headquarters at 6-1, Marunouchi 2-chome, Chiyoda-ku, Tokyo 100-8071, Japan.  Nippon Steel operates a diversified group of international industrial businesses, and is one of the world's largest manufacturers and innovators of steel products.

2. POSCO is a corporation organized and existing under the laws of the Republic of Korea (a.k.a. South Korea), with its corporate headquarters at 1, Goedong-dong, Nam-gu,

Pohang, Kyongsangbuk-do 790-600, Korea.  POSCO operates a group of international industrial businesses, which, among other things, manufactures, sells, offers to sell, and imports into the United States various types of steel products, including "electrical steel."

3. POSCO America Corporation ("POSCO America") is a wholly owned corporate subsidiary of POSCO, organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business at 2 Executive Drive, Fort Lee, New Jersey 07024.  As it explains on its website, POSCO America supplies steel products, including electrical steel products, from POSCO to customers in the North America market.

## NATURE OF THE ACTION

4. This is an action for infringement of U.S. Patent Nos. 5,261,972 ("the '972 patent"), 6,613,160 ("the '160 patent"), 7,442,260 ("the '260 patent"), and 7,976,644 ("the '644 patent") arising under the federal patent laws of United States, Title 35, United States Code, §§ 1 *et seq.*, including 35 U.S.C §§ 271 and 281.

## JURISDICTION AND VENUE

5. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C §§1331, 1338(a), and the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

6. This Court has personal jurisdiction over POSCO and POSCO America because each of these entities has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 and places infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in or from the State of New Jersey as well as other locations throughout the United States.  The acts in this District by POSCO and POSCO America cause injury to Nippon Steel.  On information and belief, POSCO and POSCO America derive substantial revenue from the sale of infringing products within this District and derive substantial revenue from interstate and international commerce associated with the infringing products.

7. Since at least 1984, when POSCO established POSCO America in this District, POSCO and POSCO America have regularly transacted and continue to regularly transact business into and/or through this District.  POSCO, for example, exports to and POSCO America

2

imports through shipping ports in New Jersey products advertised, offered for sale, sold and/or used in this District and State, and in the United States as a whole, including the products at issue in this action. Such continuous and systematic contacts subject POSCO and POSCO America to general jurisdiction in this Court. Furthermore, because this continuous business includes transactions related to the infringing products that give rise to this action, POSCO and POSCO America are subject to this Court's specific jurisdiction.

8.  Therefore, this Court has personal jurisdiction over Defendants for this action, and venue is proper in this District under 28 U.S.C. §§ 1391(b-d) and 1400(b).

## FACTUAL BACKGROUND

9.  Grain-oriented electrical steel ("GOES") is a specially designed and manufactured steel made by advanced processes that affect the formation and orientation of the steel's "grain" so as to optimize the steel's magnetic flux density. This specialized steel is used in, among other things, the cores of power and distribution transformers, and serves an important role in improving efficiency in the electrical power distribution industry.

10. Nippon Steel has long been a worldwide innovator in research and manufacturing that advance the quality and efficiency of industrial steel production. In the field of grain-oriented electrical steel, Nippon Steel has spent decades innovating GOES technology. Over those decades, Nippon Steel has invested millions of dollars into research and development that have resulted in numerous innovations that have revolutionized the quality and efficiency of GOES products as well as the way in which GOES is manufactured. Among other things, Nippon Steel is a pioneer in the development of low temperature manufacturing techniques for grain-oriented electrical steel. Low temperature manufacturing techniques produce high quality GOES at less cost than GOES produced using alternative techniques. Nippon Steel is one of only a few steel manufacturers in the world to have developed the technical capabilities to produce GOES.

11. As a result of its substantial investment in research and development, Nippon Steel has obtained numerous patents throughout the United States, Japan, and other nations

covering its technological advances.

12.     Apparently recognizing the increasing importance of GOES to the power industry, by at least the late 1980's, POSCO was actively looking for ways to advance its GOES manufacturing capabilities and sought licenses from Nippon Steel to practice Nippon Steel's patented GOES technology.  Despite various partnering projects Nippon Steel had entered into with POSCO unrelated to GOES, Nippon Steel declined to execute any GOES-related agreements with POSCO.  Frustrated by Nippon Steel's refusal to license this critical technology, POSCO implemented a long-running program whereby it obtained and copied Nippon Steel's technology by illicit means.  Using bribery and pay-offs to former Nippon Steel employees in the form of "technical consulting," POSCO obtained scores of internal Nippon Steel technical documents that detailed GOES specifications, strategic plans, and manufacturing techniques for Nippon Steel's advanced, patented grain-oriented electrical steel.  POSCO incorporated Nippon Steel's proprietary technology into its GOES products and manufacturing processes.

13.     Suspicious of the apparent improvements in POSCO's grain-oriented electrical steel achieved over an unusually short period, Nippon Steel wrote to POSCO in 2007 to remind it that Nippon Steel owned many patents throughout the world that cover processes used to manufacture GOES.  Nippon Steel identified, for example, several of its Korean patents covering such processes (including the counterpart for certain of the patents at issue in this action) and asked that POSCO explain whether it used such patents.  Although POSCO denied that it infringed Nippon Steel's patents, Nippon Steel remained suspicious—with good reason.

14.     In late 2007, the Korean government arrested, prosecuted, and convicted two former POSCO employees for selling alleged POSCO trade secrets related to grain-oriented electrical steel to a Chinese company.  Although the complete record of those proceedings is sealed, publicly-available portions of the proceedings reveal that POSCO had, in fact, obtained internal Nippon Steel technical documentation and had studied Nippon Steel's GOES patents.  Without revealing any alleged supporting evidence, the Korean court attempted to distinguish

POSCO's processes from Nippon Steel's process, but the court nonetheless recognized that POSCO had obtained technical information regarding Nippon Steel's GOES technology in an unfair manner.  Nippon Steel has repeatedly requested that the Korean government make available the Nippon Steel-related evidence used in the case, but those requests have been refused.  Nippon Steel has appealed those refusals to the Korean Supreme Court.

15. After learning of the theft of its technology through the criminal judgments against former POSCO employees in late 2008, Nippon Steel again approached POSCO and requested that POSCO stop using Nippon Steel's technology.  POSCO has failed to abide by these requests and has failed to cease its wrongful activities.  Having no choice, concurrently with the present case, Nippon Steel filed suit in Japan seeking to remedy—and stop—POSCO's unauthorized use of Nippon Steel's technology.

## COUNT 1

## INFRINGEMENT OF U.S. PATENT NO. 5,261,972

16. Nippon Steel Corporation repeats and realleges the allegations of Paragraphs 1 to 15 of its Complaint.

17. On November 16, 1993, United States Patent No. 5,261,972 was duly and legally issued by the United States Patent and Trademark Office for inventions entitled "Process for Producing Grain-Oriented Electrical Steel Strip Having High Magnetic Flux Density."  The processes described and claimed in the patent were invented by NSC's scientists, and NSC is the owner by assignment of all rights, title, and interest in the '972 patent.  A copy of the '972 patent is attached as Exhibit A.

18. POSCO and POSCO America have infringed and continue to infringe one or more claims of the '972 patent by engaging in acts constituting infringement under 35 U.S.C. § 271 including, for example, importing, without authority, into the United States grain-oriented electrical steel made by a process claimed in the '972 patent.  The grain-oriented electrical steel manufactured by POSCO, and imported into the United States by POSCO and POSCO America, is neither materially changed by any subsequent process, nor is it a trivial and nonessential

component of another product.

19. POSCO and POSCO America indirectly, through induced and/or contributory infringement, infringe the '972 patent by knowingly, or with willful blindness, causing others to infringe the '972 patent through such other's use, without authority, of grain-oriented electrical steel within the United States that is made by a process claimed in the '972 patent. POSCO and POSCO America gained knowledge of the '972 patent, or were willfully blind to its existence, through at least communications had with Nippon Steel and/or POSCO's efforts to obtain and copy Nippon Steel's technology. Despite knowledge or willful blindness of the '972 patent, POSCO and POSCO America intentionally practiced and practice one or more claims of the '972 patent, imported and continue to import GOES into the United States, and sold and continue to sell such GOES to customers with the intention that such GOES be used in the United States. Such GOES is not a staple article or commodity of commerce and has no non-infringing uses.

20. POSCO and POSCO America's infringement of the '972 patent has been and continues to be intentional, willful, and without regard to Nippon Steel's rights. POSCO and POSCO America's infringement of the '972 patent is and has been intentional, deliberate, and willful at least because POSCO had knowledge of the '972 patent through direct or indirect communications with Nippon Steel and/or as a result of POSCO's illicit efforts to obtain Nippon Steel's technology. In fact, Nippon Steel expressly identified the Korean counterpart to the '972 patent to POSCO in the parties' prior correspondence.

21. Nippon Steel is informed and believes that POSCO and POSCO America have gained profits by virtue of their infringement of the '972 patent.

22. Nippon Steel has sustained damages as a direct and proximate result of POSCO and POSCO America's infringement of the '972 patent.

23. Nippon Steel will suffer and is suffering irreparable harm from POSCO and POSCO America's infringement of the '972 patent. Nippon Steel has no adequate remedy at law and is entitled to an injunction against POSCO and POSCO America's continuing infringement of the '972 patent. Unless enjoined, POSCO and POSCO America will continue their infringing

conduct.

24.     This case is exceptional and therefore Nippon Steel is entitled to its attorneys' fees and costs in prosecuting this case pursuant to 35 U.S.C. § 285.

## COUNT 2

## INFRINGEMENT OF U.S. PATENT NO. 6,613,160

25.     Nippon Steel Corporation repeats and realleges the allegations of Paragraphs 1 to 24 of its Complaint

26.     On September 2, 2003, United States Patent No. 6,613,160 was duly and legally issued by the United States Patent and Trademark Office for inventions entitled "Method to Produce Grain-Oriented Electrical Steel Sheet Having High Magnetic Flux Density." The processes described and claimed in the patent were invented by NSC's scientists, and NSC is the owner by assignment of all rights, title, and interest in the '160 patent. A copy of the '160 patent is attached as Exhibit B.

27.     POSCO and POSCO America have infringed and continue to infringe one or more claims of the '160 patent by engaging in acts constituting infringement under 35 U.S.C. § 271 including, for example, importing, without authority, into the United States GOES made by a process claimed in the '160 patent. The GOES manufactured by POSCO, and imported into the United States by POSCO and POSCO America, is neither materially changed by any subsequent process, nor is it a trivial and nonessential component of another product.

28.     POSCO and POSCO America indirectly, through induced and/or contributory infringement, infringe the '160 patent by knowingly, or with willful blindness, causing others to infringe the '160 patent through such other's use, without authority, of GOES within the United States that is made by a process claimed in the '160 patent. POSCO and POSCO America gained knowledge of the '160 patent, or were willfully blind to its existence, through at least communications had with Nippon Steel and/or POSCO's efforts to obtain and copy Nippon Steel's technology. Despite knowledge or willful blindness of the '160 patent, POSCO and POSCO America intentionally practiced and practice one or more claims of the '160 patent,

imported and continue to import GOES into the United States, and sold and continue to sell such GOES to customers with the intention that such GOES be used in the United States. Such GOES is not a staple article or commodity of commerce and has no non-infringing uses.

29. POSCO and POSCO America's infringement of the '160 patent has been and continues to be intentional, willful, and without regard to Nippon Steel's rights. POSCO and POSCO America's infringement of the '160 patent is and has been intentional, deliberate, and willful at least because POSCO had knowledge of the '160 patent through direct or indirect communications with Nippon Steel and/or as a result of POSCO's illicit efforts to obtain Nippon Steel's technology.

30. Nippon Steel is informed and believes that POSCO and POSCO America have gained profits by virtue of their infringement of the '160 patent.

31. Nippon Steel has sustained damages as a direct and proximate result of POSCO and POSCO America's infringement of the '160 patent.

32. Nippon Steel will suffer and is suffering irreparable harm from POSCO and POSCO America's infringement of the '160 patent. Nippon Steel has no adequate remedy at law and is entitled to an injunction against POSCO and POSCO America's continuing infringement of the '160 patent. Unless enjoined, POSCO and POSCO America will continue their infringing conduct.

33. This case is exceptional and therefore Nippon Steel is entitled to its attorneys' fees and costs in prosecuting this case pursuant to 35 U.S.C. § 285.

## COUNT 3
### INFRINGEMENT OF U.S. PATENT NO. 7,442,260

34. Nippon Steel Corporation repeats and realleges the allegations of Paragraphs 1 to 33 of its Complaint.

35. On October 28, 2008, United States Patent No. 7,442,260 was duly and legally issued by the United States Patent and Trademark Office for inventions entitled "Grain-Oriented Electrical Steel Sheet Superior in Electrical Characteristics and Method of Production of Same."

The processes described and claimed in the patent were invented by NSC's scientists, and NSC is the owner by assignment of all rights, title, and interest in the '260 patent. A copy of the '260 patent is attached as Exhibit C.

36. POSCO and POSCO America have infringed and continue to infringe one or more claims of the '260 patent by engaging in acts constituting infringement under 35 U.S.C. § 271 including, for example, importing, without authority, into the United States GOES made by a process claimed in the '260 patent. The GOES manufactured by POSCO, and imported into the United States by POSCO and POSCO America, is neither materially changed by any subsequent process, nor is it a trivial and nonessential component of another product.

37. POSCO and POSCO America indirectly, through induced and/or contributory infringement, infringe the '260 patent by knowingly, or with willful blindness, causing others to infringe the '260 patent through such other's use, without authority, of GOES within the United States that is made by a process claimed in the '260 patent. POSCO and POSCO America gained knowledge of the '260 patent, or were willfully blind to its existence, through at least communications had with Nippon Steel and/or POSCO's efforts to obtain and copy Nippon Steel's technology. Despite knowledge or willful blindness of the '260 patent, POSCO and POSCO America intentionally practiced and practice one or more claims of the '260 patent, imported and continue to import GOES into the United States, and sold and continue to sell such GOES to customers with the intention that such GOES be used in the United States. Such GOES is not a staple article or commodity of commerce and has no non-infringing uses.

38. POSCO and POSCO America's infringement of the '260 patent has been and continues to be intentional, willful, and without regard to Nippon Steel's rights. POSCO and POSCO America's infringement of the '260 patent is and has been intentional, deliberate, and willful at least because POSCO had knowledge of the '260 patent through direct or indirect communications with Nippon Steel and/or as a result of POSCO's illicit efforts to obtain Nippon Steel's technology.

39. Nippon Steel is informed and believes that POSCO and POSCO America have

9

gained profits by virtue of their infringement of the '260 patent.

40. Nippon Steel has sustained damages as a direct and proximate result of POSCO and POSCO America's infringement of the '260 patent.

41. Nippon Steel will suffer and is suffering irreparable harm from POSCO and POSCO America's infringement of the '260 patent. Nippon Steel has no adequate remedy at law and is entitled to an injunction against POSCO and POSCO America's continuing infringement of the '260 patent. Unless enjoined, POSCO and POSCO America will continue their infringing conduct.

42. This case is exceptional and therefore Nippon Steel is entitled to its attorneys' fees and costs in prosecuting this case pursuant to 35 U.S.C. § 285.

## COUNT 4

## INFRINGEMENT OF U.S. PATENT NO. 7,976,644

43. Nippon Steel Corporation repeats and realleges the allegations of Paragraphs 1 to 42 of its Complaint.

44. On July 12, 2011, United States Patent No. 7,976,644 was duly and legally issued by the United States Patent and Trademark Office for inventions entitled "Method of Production of Grain-Oriented Electrical Steel Sheet with High Magnetic Flux Density." The processes described and claimed in the patent were invented by NSC's scientists, and NSC is the owner by assignment of all rights, title, and interest in the '644 patent. A copy of the '644 patent is attached as Exhibit D.

45. POSCO and POSCO America have infringed and continue to infringe one or more claims of the '644 patent by engaging in acts constituting infringement under 35 U.S.C. § 271 including, for example, importing, without authority, into the United States GOES made by a process claimed in the '644 patent. The GOES manufactured by POSCO, and imported into the United States by POSCO and POSCO America, is neither materially changed by any subsequent process, nor is it a trivial and nonessential component of another product.

46. POSCO and POSCO America indirectly, through induced and/or contributory

infringement, infringe the '644 patent by knowingly, or with willful blindness, causing others to infringe the '644 patent through such other's use, without authority, of GOES within the United States that is made by a process claimed in the '644 patent.  POSCO and POSCO America gained knowledge of the '644 patent, or were willfully blind to its existence, through at least communications had with Nippon Steel and/or POSCO's efforts to obtain and copy Nippon Steel's technology.  Despite knowledge or willful blindness of the '644 patent, POSCO and POSCO America intentionally practiced and practice one or more claims of the '644 patent, imported and continue to import GOES into the United States, and sold and continue to sell such GOES to customers with the intention that such GOES be used in the United States.  Such GOES is not a staple article or commodity of commerce and has no non-infringing uses.

47. POSCO and POSCO America's infringement of the '644 patent has been and continues to be intentional, willful, and without regard to Nippon Steel's rights.  POSCO and POSCO America's infringement of the '644 patent is and has been intentional, deliberate, and willful at least because POSCO had knowledge of the '644 patent through direct or indirect communications with Nippon Steel and/or as a result of POSCO's illicit efforts to obtain Nippon Steel's technology.

48. Nippon Steel is informed and believes that POSCO and POSCO America have gained profits by virtue of their infringement of the '644 patent.

49. Nippon Steel has sustained damages as a direct and proximate result of POSCO and POSCO America's infringement of the '644 patent.

50. Nippon Steel will suffer and is suffering irreparable harm from POSCO and POSCO America's infringement of the '644 patent.  Nippon Steel has no adequate remedy at law and is entitled to an injunction against POSCO and POSCO America's continuing infringement of the '644 patent.  Unless enjoined, POSCO and POSCO America will continue their infringing conduct.

51. This case is exceptional and therefore Nippon Steel is entitled to its attorneys' fees and costs in prosecuting this case pursuant to 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nippon Steel Corporation respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. Declaring that Defendants have infringed and are infringing one or more claims of U.S. Patent Nos. 5,261,972, 6,613,160, 7,442,260, and/or 7,976,644;

B. Awarding to Plaintiff the damages arising out of Defendants' infringement of the '972, '160, '260, and/or '644 patents, in an amount according to proof and as provided by law, together with prejudgment and post-judgment interest and costs as fixed by the Court;

C. Awarding to Plaintiff pursuant to 35 U.S.C.§ 284 enhanced damages, up to and including trebling of Plaintiff's damages, for Defendants' willful infringement;

D. Declaring that this case is exceptional with the meaning of 35 U.S.C. § 285;

E. Awarding to Plaintiff pursuant to 35 U.S.C.§ 285 reasonable attorneys' fees due to the exceptional nature of this case, or awarding such fees as otherwise permitted by law;

F. Granting a permanent injunction restraining and enjoining Defendants and their officers, agents, attorneys, and employees, and those acting in privity or concert with them, from engaging in the importation into the United States, or the manufacture, offering to sell, sales, or use in the United States, of any products made by processes claimed in one or more claims of the '972, '160, '260, and/or '644 patents until the expiration of each of the relevant patents or until such later date as the Court may determine;

G. Awarding such further and other relief as this Court may deem just and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Nippon Steel Corporation demands a trial by jury on any and all issues so triable.

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

Nippon Steel, by its undersigned counsel, hereby certifies pursuant to L.Civ.R. 11.2 that the matters in controversy are not the subject of any other action pending in any court (other than the Japanese litigation referenced in paragraph 15 of this Complaint) or of any pending arbitration or administrative proceeding.

Dated:  April 24, 2012	Respectfully submitted,

*/s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
GRAHAM CURTIN
A Professional Association
Four Headquarters Plaza, P.O. Box 1991
Morristown, New Jersey  07962-1991
Telephone:  973-292-1700
Facsimile: 973-292-1767

Attorneys for Plaintiff
NIPPON STEEL CORPORATION

Of Counsel:

Mark Reiter
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX  75201-6912
Telephone: 214-698-3100

Jason Lo
Raymond LaMagna
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213-229-7000