UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NIPPON STEEL & SUMITO METAL
CORPORATION,

                              Plaintiff,

v.

POSCO AND POSCO AMERICA
CORPORATION,

                              Defendants.

Civil Action No.: 12-2429 (DMC)

OPINION

FALK, U.S.M.J

I.     INTRODUCTION

This action is part of a worldwide global intellectual property battle between Plaintiff,

Nippon Steel & Sumito Metal Corporation ("Nippon"), and Defendants, POSCO and POSCO

America Corporation,[1] related to grain-oriented electrical steel ("GOES").  GOES is specialized

steel used in the cores of power and distribution transformers.  The claims in the case are for

patent infringement, false advertising and unfair competition.  There are other proceedings

involving the parties pending in foreign jurisdictions, including a theft of trade secrets case filed

by Nippon in Japan, and two proceedings in Korea—a declaratory judgment action filed by

POSCO, and an appeal pending in the Korean Supreme Court that involves access to evidence in

certain Korean criminal proceedings.  The overarching issue in all of these proceedings is

---

[1] Defendants are referred to herein collectively as "POSCO."

Nippon's contention that POSCO has engaged in a multi-year program of corporate espionage, including theft and bribery, directed toward Nippon's GOES technology, and that POSCO has incorporated Nippon's GOES technology into its own GOES manufacturing process.

The original complaint in this case was filed on April 24, 2012.  The operative pleading is the First Amended Complaint, filed on October 26, 2012, which contains claims for (i) willful infringement of four patents—U.S. Patent Nos. 5,261,972 ("the '972 patent"); 6,613,160 ("the '160 patent"); 7,442,260 ("the '260 patent"); and 7,976,644 ("the '644 patent"); (ii) false advertising arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) unfair competition arising under common law; and (iv) violation of the New Jersey Fair Trade Act, N.J.S.A. § 56:4-1.

POSCO requested the United States Patent and Trademark Office ("USPTO") reexamine the four patents-in-suit, and the request was granted.  Now pending before the Court is POSCO's motion to stay this case pending completion of the USPTO reexamination proceedings. [CM/ECF No. 63.]  Full briefing has been submitted, including a sur-reply brief.  Oral Argument was held on April 19, 2013.  At oral argument, the parties submitted demonstrative slides in aide of their oral presentations, which have been considered and are referenced herein.  After comprehensive review of all the briefing submitted and the transcript of oral argument, POSCO's motion is **DENIED**.

II.     **BACKGROUND**

A.     **Factual**[2]

Nippon is a long standing, worldwide leader in the industrial steel industry and has invested decades of research and millions of dollars into innovating GOES technology.  (Compl., ¶ 10.)  POSCO is large multi-dimensional company with $3 billion in annual revenue and is a direct competitor of Nippon in the GOES industrial steel industry.  (Compl., ¶ 12.)

In the late 1980s, Nippon contends that it was leading the GOES market worldwide, and that POSCO was falling behind its competitors with respect to its GOES manufacturing capabilities.  As a result, Nippon claims that POSCO was looking for ways to improve its GOES manufacturing and approached it about licensing Nippon's GOES technology, which Nippon declined to do.  (Compl., ¶ 12.)  According to Nippon, this caused POSCO to resort to a "systematic, and company-sanctioned, program of using illicit means to build GOES business on the back of Nippon's proprietary technology."  (Compl., ¶ 12.)  Nippon alleges that these illicit means included the use of "bribery and pay-offs" to former Nippon employees in order to obtain proprietary Nippon documents that described Nippon's technology, which POSCO then willfully copied and implemented.

In 2007, Nippon contends that suspicion about POSCO's improvements in the GOES market caused it to communicate with POSCO to determine whether POSCO was using Nippon's technology.  (Compl., ¶ 13; Declaration of Robert Vincent ("Vincent Decl.") Ex. 11, at 8-10.)  Nippon contends that it notified POSCO that it owned patents covering the GOES

---

[2] The facts is this section are drawn from the Amended Complaint and declarations submitted in connection with the pending motion, and should not be understood as findings on any factual issues in dispute.

manufacturing process, including a Korean counterpart to certain patents in this case.  Nippon also alleges that it requested that POSCO explain how POSCO's low-temperature GOES manufacturing methods compared to those in Nippon's patents, and whether it believed it was authorized to use such technology.  (Vincent Decl., Ex. 1.)  According to Nippon, POSCO refused to take a position on whether it infringed Nippon's patents and only stated that its GOES manufacturing process differed from those used by Nippon.  (Vincent Decl., Ex. 8.)

At a time Nippon describes as "contemporaneous" with the communications between the companies over the GOES process, the Korean government arrested, prosecuted, and convicted two former POSCO employees for selling GOES-related trade secrets to a Chinese steel company.  (Declaration of Shinji Minobe ("Minobe Decl.") ¶ 8.)  According to translations of those proceedings, Nippon contends that the information that POSCO's employees sold were not POSCO's own trade secrets but actually those of Nippon, which the court concluded POSCO may have received from former Nippon engineers.  (Id.)  Nippon subsequently made requests to the Korean District Prosecutor's Office to inspect the case records, including the documents evidencing that POSCO possessed Nippon's GOES technology.  The Prosecutor's Office, supported by POSCO, denied the request, which was appealed to a Korean District Court.  That court partially reversed and found that Nippon's request to inspect and copy certain documents was reasonable because the prosecution record indicated that "POSCO made contract agreements with the retired engineers of Nippon Steel Corporation . . . while the company developed the manufacturing technology for the low temperature heating process for [GOES] and received various documents and information of Nippon Steel Corporation from these people . . . and that it is hard to believe that those records [contain] the trade secret of POSCO or that disclosure of

those aforementioned records may infringe the trade secret of POSCO." (Id. Ex.1, at 27.)  The

Prosecutor's Office in Korea appealed the decision to the Korean Supreme Court, where the case

remains pending.  At this point, Nippon has not had access to those files.[3]

Nippon contends that while this was all going on, POSCO expanded its GOES market

presence.  According to Nippon, since 2010, POSCO has enjoyed a quintuple increase in its

GOES imports into the United States.  In contrast, Nippon's market share has decreased

substantially.

In 2012, the parties filed a series of suits against each other.  On April 24, Nippon filed

two suits against POSCO—one in this Court, and one in Japan.  In July, POSCO countered by

suing Nippon in Korea seeking a declaratory judgment that any judgment Nippon obtains in

Japan would not be enforceable in Korea.

**B.**     **Procedural**

On August 21, 2012, the Court held an initial conference and issued a scheduling order,

which provided for the close of discovery on May 13, 2013.[4]

On September 10, 2012, POSCO filed reexamination requests on all four patents in suit

---

[3] Nippon is partially relying on allegations derived from an individual's defense in a criminal proceeding in a foreign jurisdiction.  POSCO obviously disputes these allegations. Nothing herein should be construed to endorse a particular version of the events.

[4] At the initial conference and in letters shortly thereafter, the parties presented a number of discovery disputes including Nippon's request to cross-use discovery in this case in the cases pending elsewhere; the entry of a confidentiality order; and other disputes about document demands and disclosure of POSCO's GOES process.  The volume of the disputes—and the tenor of the relationship between the parties here and elsewhere—resulted in the District Judge appointing a Special Master on December 6, 2012.  The Special Master issued a Report on discovery issues on February 26, 2013.  Nippon promptly filed objections to the Special Master's findings.  The Special Master has also extended discovery to August 13, 2013.

with the USPTO.  (Declaration of William P. Deni, Esq. dated November 9, 2012 ("Deni Decl.")

Exs. A-D; CM/ECF No. 49.)  The requests covered all of the claims in all four patents.  (Id.)[5]

On September 28, 2012, the PTO granted *ex-parte* reexamination of the '972 patent but

has not issued an office action thereon.  (Deni Decl., Ex. F.)

On October 26, 2012, Nippon filed an Amended Complaint, alleging, in addition to the

patent claims in the original complaint, counts for false advertising, common law unfair

competition, and violation of the New Jersey Fair Trade Act.

On October 26, 2012, the PTO granted *inter partes* reexamination of the '260 patent and

issued a non-final office action, which rejected claims 1-5 of the '260 patent as unpatentable on

obviousness grounds.  (Declaration of Mara E. Zazzali-Hogan, Esq. dated December 11, 2012

("Zazzali-Hogan Decl.") at Ex. C; CM/ECF No. 63-2.)  The office action confirmed the

patentability of claims 6 and 7 of the '260 patent.  (Id.)

On November 8, 2012, the PTO granted *inter partes* reexamination of the '644 patent and

issued a non-final office action, which rejected all of the claims in the patent.  (Zazzali-Hogan

Decl., Exs. B, E.)

On November 9, 2012, POSCO filed a motion to dismiss the non-patent claims in the

amended complaint.

On November 19, 2012, the PTO granted *inter partes* reexamination of the '160 patent

and issued a non-final office action, which rejected all of the claims in the patent.  (Zazzali-

Hogan Decl., Exs. A, D.)

---

[5] POSCO did not inform the Court of its intention to request reexamination at the initial
scheduling conference.

On December 11, 2012, POSCO filed the present motion to stay the case pending reexamination.

**C.**     **Stay Motion – Summary of the Arguments**

POSCO claims that stay of the entire case is appropriate because USPTO statistics generally suggest that a large number of patents that undergo reexamination are either rejected or substantially altered.  Thus, POSCO contends that proceeding with this case now would be a waste of time and resources.  POSCO further argues that the stay should extend to both the patent and non-patent claims because, it contends, the unfair competition and false advertising claims derive from, and would not have an independent existence outside of, the patent claims.  In other words, if the patent claims are eliminated through reexamination, the rest of the case would fall away as well.  POSCO also argues that Nippon's alleged prejudice—the loss of market share to a direct competitor—is due to a variety of economic factors and business decisions that have nothing to do with POSCO's expanding business.  Finally, POSCO claims discovery is in the early stages.

Nippon opposes a stay on a variety of grounds.  First, it contends POSCO's stay request is a tactically motivated attempt to delay the case and drag out the worldwide litigation between the parties.  Second, Nippon claims that no stay—of patent or non-patent claims—is appropriate because the parties are direct competitors in the GOES marketplace; because Nippon is suffering genuine, continuous prejudice from POSCO's use of Nippon's protected information; and because a stay would allow POSCO to continue to alter the dynamics of the marketplace for years as the PTO reexamination process unfolds.  Third, with respect to the non-patent claims, Nippon argues against a stay on the grounds that these claims are not dependent on the validity of

the patents at all, and that its non-patent claims allege misuse of Nippon's "confidential" and

"proprietary" information, regardless of whether that information is protected by a patent.

Fourth, Nippon contends that the reexamination proceedings were strategically filed as a stall

tactic to delay the case.  Finally, Nippon contends that the stage of discovery weighs against a

stay because this case is further along than any reexamination proceeding.

## III.   APPLICABLE LAW

Staying a patent case during reexamination is discretionary.  See Viskase Corp. v. Am.

Nat'l Can Co., 261 F.3d 1316, 1328 (Fed Cir. 2001); Ethicon Ins. Co. v. Quigg, 849 F.2d 1422,

1426-27 (Fed. Cir. 1988).  The party seeking a stay of civil litigation bears a burden of showing it

is appropriate.  See Landis v. N. Am. Co., 299 U.S. 248, 255 (1936).  In the patent context, a

number of courts have noted the generally liberal policy towards stays pending patent

reexamination by the USPTO.  See, e.g., Sabert Corp. v. Waldington N. Am., 2007 WL 2705157,

at *6 (D.N.J. Sept. 14, 2007); Cima Labs Co., Inc. v. Actavis Group HF, 2007 WL 1672229, at

*9 (D.N.J. June 7, 2007).  This policy arises due to the potential waste in using a court's time and

resources when a USPTO decision could drastically alter the nature of the case.  See WABCO

Holdings v. Bendix Commercial Vehicle Sys., 2010 WL 2628335, at *2 n.2 (D.N.J. June 28,

2010) (Falk, J.).  However, a stay pending reexamination is not automatic because a "stay in

litigation inevitably causes further delay in an already lengthy process, and could potentially

harm [the opposing party]."  Brass Smith, LLC v. RPI Indus., 2011 WL 4444717, at *2 (D.N.J.

Nov. 1, 2010).

Rather than a *per se* rule of automatically staying patent cases pending reexamination,

stay determinations must always be made on the facts of the individual case at hand.  See, e.g.,

Datatreasury Corp. v. Wells Fargo & Co., 490 F. Supp. 2d 749, 755 (E.D. Tex. 2006) ("The court notes that each motion to stay pending reexamination filed in this court is considered on a case-by-case basis with each cause of action presenting distinct circumstances; there exists no policy in this court to routinely grant such motions.").  In deciding whether to stay a given matter pending reexamination, courts frequently consider three factors:  (1) whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simply the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.  See, e.g., WABCO, 2010 WL 2628335, at *2; APP Pharma, LLC v. Ameridose, LLC, 2011 WL 816622, at *2 (D.N.J. Mar. 8, 2011) (citing Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).

## IV.   ANALYSIS

A stay is not appropriate at this time.  As detailed below, each of the primary factors, as well certain additional considerations, weigh against a stay of this case.

### 1.   Prejudice/Tactical Advantage

#### A.   Nippon will be Prejudiced by a Stay

There is no dispute that Nippon and POSCO are direct, bare-knuckle competitors in the grain oriented steel market.  Contrary to the generally liberal policy of staying patent cases pending reexamination, courts are hesitant to stay patent cases when "direct market competitors" are involved.  See, e.g., Cordis v. Abbott Labs, 2009 WL 8591527, at *1 (D.N.J. Feb. 3, 2009) (Pisano, J.) (denying stay pending reexamination because "the Court agrees that Cordis will be prejudiced by the imposition of a stay.  According to Cordis, Abbott's product directly competes with its product and has caused a significant decline in Cordis's market share.  If Cordis is

required to wait for the PTO to complete its reexamination before enforcing its patents against

Abbott, Cordis may be harmed even further."); <u>Imagevision Net v. Internet Exchange</u>, 2013 WL

663535, at *6 (D. Del. Feb. 25, 2013) (denying motion to stay and noting that "courts are

generally reluctant to stay proceedings where the parties are direct competitors"); <u>Shurtape v. 3M</u>

<u>Company</u>, 2013 WL 789984, at *2 (W.D.N.C. Mar. 4, 2013); <u>Pentair Water Pool & Spa v.</u>

<u>Hayward Indus.</u>, 2012 WL 6608619, at *2 (E.D.N.C. Dec. 18, 2012); <u>APP Pharma v. Ameridose</u>,

2011 WL 816622, at *2 (D.N.J. Mar. 8, 2011); <u>Adaptor, Inc. v. Sealing Sys., Inc.</u>, 2010 WL

4236875, at *3 (E.D. Wis. 2010).  The Court must look at the "competing interests of the parties"

and determine whether there is "even a fair possibility that the stay would work damage on

another party."  <u>Image Vision.Net, Inc.</u>, 2012 WL 5599338, at *3.  If such a possibility exists, the

"party requesting a stay must demonstrate that the denial of a stay would result in a clear case of

hardship or inequity."  <u>Id.</u>

   Nippon has clearly established the possibility of prejudice resulting from a potential stay.

It alleges, and has put forth some evidence, that it has lost more than 72% of its GOES market

share, while POSCO correspondingly has expanded its market presence by 412%.  (Minobe

Declaration ¶ 5; Vincent Decl., Ex. 12; Plaintiff's Demonstrative Slides ("PDS") at 34.)  Nippon

attributes this loss to improper conduct undertaken by POSCO—largely in other countries—after

Nippon refused to license its GOES technology.  Nippon supports this position with specific

allegations included in papers filed under Rule 11 and with translations of Korean court

proceedings that could be interpreted to support its position.  These are not conclusory

allegations that a mere routine delay occasioned by reexamination will cause prejudice to the

non-moving party.  <u>See, e.g.</u>, <u>A.R. Arena Products, Inc. v. Grayling Indus., Inc.</u>, 2012 WL

10

2953190 at *5 (N.D. Ohio June 25, 2012) (denying stay when allegation of harm was "conclusory and unsupported."). These are specific allegations of expected real harm supported by some evidence.

The Court certainly does <u>not</u> find that POSCO has done anything wrong. But when parties are directly competing and the landscape of the relevant market is changing, it presents a circumstance where justice demands that the allegedly aggrieved party be given an opportunity to litigate its claims—and sooner rather than later. <u>See, e.g.</u>, <u>Cordis</u>, 2009 WL 8591527, at *1 <u>Adaptor</u>, 2010 WL 4236875, at *3 ("While Adaptor is correct that money damages provide a remedy if SSI prevails, the court does not believe such damages provide sufficient reason to delay for possibly two years before SSI may even begin to litigate the enforcement of its rights. Given that reexamination could take two years before litigation even begins, not including any time possibly spent appealing such a decision, the potential delay alone is enough to suggest loss of market share and eroded prices if an alleged infringer is allowed to continue its practices in the meantime.").

If Nippon is correct, it would be extremely prejudicial to force the company to the litigation sideline while its business market is subjected to a potentially permanent alteration. <u>See</u> <u>Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC</u>, 2011 WL 836673 (D. Md. Mar. 3, 2011) ("[T]he Federal Circuit has recognized . . . that it may sometimes be impossible to restore a patentee's original market share after years of infringement, because customers' business relationships and expectations will have changed. This possibility . . . if unrebutted . . . is sufficient to weigh heavily against granting a stay."). At the end of the day, Nippon may be incorrect about POSCO and its conduct and the USPTO may ultimately reject its patents in full.

11

But given the allegations involved and the parties' relationship, it seems unfair—and prejudicial to Nippon—to discontinue this litigation in order to allow the USPTO to weigh in on some, <u>but not all</u>, of the claims in this case.

Finally, the possibility of prejudice to Nippon is exacerbated by the lack of certainty about the reexamination process.  The parties cite diametrically different statistics about how long the reexamination proceedings may take, but there is at least some consensus that it could take many months or even years.  The inescapable conclusion is that Nippon has shown that a delay may cause it prejudice through the permanent alteration of the GOES marketplace and the continuing infringement of their patents and misuse of their proprietary information.  <u>See, e.g.</u>, <u>Robert Bosch LLC v. Pylon Mfg. Corp.</u>, 659 F.3d 1142, 1150-51 (Fed. Cir. 2011).

The specificity of the allegations and the tangible proof of prejudice Nippon has submitted contrasts this case and a run-of-the-mill patent case that might ordinarily be stayed pending reexamination.[6]  Thus, the Court is satisfied that Nippon has shown that it may suffer prejudice from a stay.

---

[6] POSCO claims that Nippon's allegations of harm are overblown because Nippon never moved for a preliminary injunction.  The Court disagrees under the particular facts here.  Nippon has sufficiently explained that it may not have moved for a preliminary injunction for a number of reasons, including the need for discovery of POSCO's technical process for producing GOES in order to show that it has a likelihood of success on the merits of its infringement claims.  In any event, the failure to move for a preliminary injunction does not erase the fact that Nippon would likely suffer tangible harm from a stay.  <u>See, e.g.</u>, <u>Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC</u>, 2011 WL 836673 (D. Md. Mar. 3, 2011); <u>Cooper Notification, Inc. v. Twitter, Inc.</u>, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010) (where plaintiff needed "substantial discovery (possibly including access to Defendants' source code)" to prove infringement, the failure to seek a preliminary injunction "presents no reason" to stay the case).

**B.**    **POSCO is Not Burdened by Proceeding With the Case**

    **i.**    **POSCO relies on Generic Case Law Favoring Stays**

As Nippon has shown the possibility of prejudice resulting from a stay, the burden is on POSCO to show proceeding with the case would result in "hardship or inequity." Image Vision.Net, Inc., 2012 WL 5599338, at *3. It has not done so.

POSCO's stay argument is primarily an "inevitability" argument. POSCO contends that patent cases are routinely stayed pending reexamination and this one should be as well. This argument is based on citation to well reasoned, yet non-binding, case law that suggests that patent stays are frequently granted. The Court acknowledges this. However, blind application of that principle in every case would ignore the requirement to evaluate the propriety of a stay in each individual case. See Datatreasury Corp. v. Wells Fargo & Co., 490 F. Supp. 2d 749, 755 (E.D. Tex. 2006) ("The court notes that each motion to stay pending reexamination filed in this court is considered on a case-by-case basis with each cause of action presenting distinct circumstances; there exists no policy in this court to routinely grant such motions.").[7] As discussed herein, the unique nature of this case and the relationship between the parties make this

---

[7] At oral argument, POSCO relied on legislative history associated with the enactment of the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), reflecting that individual Senators expressed preferences that stays of patent litigation be freely granted during reexamination proceedings. (See Transcript of Oral Argument dated April 19, 2013 ("Tr.") at 7-12.) This Senatorial preference no doubt reflects the majority of existing case law. Yet, Congress decidedly did not provide for an automatic litigation stay upon the commencement of reexamination proceedings, perhaps to account for individual circumstances of unique cases. Cf. ADA Solutions, Inc. v. Engineered Plastics, Inc., 826 F. Supp. 2d 348, 350 (D. Mass. 2011).

13

the unusual case.[8]

### ii.    The Stay Request is Undermined by the USPTO's Confirmation of Certain Patent Claims

POSCO also will not be prejudiced by proceeding with the patent claims because two claims in the '260 patent (claims 6 and 7) have been <u>confirmed</u> by the PTO.  (<u>See</u> Zazzali-Hogan Decl. at Ex. C; <u>see also</u> PDS at 50.)  Nippon already persuasively argues that confirmed claims 6 and 7 in the '260 patent allege willful patent infringement and will require infringement discovery that would mirror infringement discovery on the whole patent.  In other words, the scope of infringement discovery Nippon seeks on claims 6 and 7 will be essentially the same, regardless of what happens with the remainder of the claims under reexamination.

POSCO attempts to counter that the confirmed claims are actually dependent upon another claim in the '260 patent that *is* subject to reexamination, and that, therefore, these claims may later be rejected by the PTO.  Perhaps, but the alleged dependency is certainly not clear.  Also, the dependency argument begs the question why the PTO affirmatively confirmed claims 6 and 7.  While the parties dispute what the PTO *may* do, what the PTO *has* done is *confirm* claims 6 and 7.  They are in the case, and they are not subject to reexamination at this time.  Given the fact that these claims will proceed, and given the fact that Nippon's discovery requests will be

---

[8] For this reason, POSCO's reliance on <u>Synchronoss Technologies v. Asurion Mobile Applications, Inc.</u>, 2013 WL 1192266 (D.N.J. Mar. 22, 2013) is not helpful.  At oral argument, POSCO repeatedly invoked <u>Synchrnoss</u> for the proposition that "almost every reported New Jersey district court opinion that has considered the issue has granted a stay where reexamination was pending."  (<u>Id.</u> at *1, *5; Tr. at 11-15.)  However, that does not demonstrate that a stay is appropriate in <u>this</u> case.  It also ignores that the quote from <u>Synchronoss</u> was simply that court quoting an argument from a brief submitted by one of the litigants in that case.  The reality is the only appropriate inquiry is whether the particular facts of <u>this</u> case warrant a stay.  The facts here are different than <u>Synchronoss</u> and weigh against a stay.

the same, this seriously undermines the concept of a patent stay "because the Court and both parties would still incur many of the same costs."  Natl' Prod. v. Gamber-Johnson, 2012 WL 3527938, at *2 (W.D. Wash. Aug. 14, 2012).[9]

     **iii.**    **Nothing Justifies a Stay of the Non-Patent Claims in the Amended Complaint**

Finally, POSCO suffers no hardship or inequity by proceeding with the full case now because the Amended Complaint contains non-patent claims that will involve overlapping factual issues and discovery with the patent claims.

The Complaint contains non-patent claims for violation of the New Jersey Fair Trade Act, false advertising under the Lanham Act, and unfair competition under common law.  (Compl., ¶¶ 57-70.)  Generally speaking, claims unrelated to patent infringement will not be stayed during a patent reexamination.  See, e.g., CCP Sys. AG v. Samsung Electronics Corp., 2010 WL 5080570, at *4-5 (D.N.J. Dec. 7, 2010) ("[If] unrelated matters would continue to be an issue . . . a stay would not preserve many resources.").  If the claims are not dependent on the patent and would otherwise have an independent existence, there is no conservation of time and resources occasioned by reexamination because the claims will continue unaffected following whatever action the USPTO takes.  See id..

POSCO argues that the non-patent claims should not proceed and should be stayed along with patent claims during the pendency of reexamination because they are dependent on validity of the patents and the patented technology.  To support its argument, POSCO attempts to blend

---

[9] The parties spend much time arguing over whether claims 6 and 7 are technically dependent upon other claims in the '260 patent that are still under reexamination.  However, there does not appear to be much of a dispute that, if need be, Nippon could simply re-state claims 6 and 7 as fully independent claims.  See Bloom Engineering Co. v. N. Am. Mfg. Co., Inc., 129 F.d 1247, 1250 (Fed. Cir. 1997).

Nippon's patent and non-patent claims together by citing sections of the Complaint that use the

words "patented" when discussing the Nippon information allegedly being misappropriated as

part of the non-patent claims.  However, the portions of the Complaint that POSCO relies on are

not helpful.  Indeed, the language of the non-patent allegations in the Complaint are pleaded in

the *disjunctive*, referring both to patented technology and/or *non-patented confidential*

*information*.  For example, POSCO relies on Paragraphs 11, 12, and 16 of the Complaint, which

state:

- Nippon developed "numerous proprietary and commercially valuable refinements in GOES technology "including advances made to both patented and unpatented manufacturing techniques and associated processes.  (Compl., ¶ 11) (emphasis added)

- "POSCO incorporated Nippon Steel's proprietary patented and unpatented technology into its GOES technology (Compl., ¶ 12) (emphasis added);

- "Nippon Steel developed "numerous proprietary and commercially valuable refinements." (Compl., ¶ 16) (emphasis added).

Contrary to POSCO's argument, these claims do not depend on the validity of the patents

in suit.  They expressly speak of "proprietary" and "commercially valuable" information and

specifically refer to unpatented manufacturing techniques.  Nippon confirms this in its papers,

describing its non-patent claims as claims "based on POSCO's misappropriation of Nippon's

"confidential" and "proprietary information," and that these claims are "agnostic as to whether

POSCO misappropriated patented or unpatented technology."  (Nippon Br. at 24.)   Indeed,

POSCO itself has previously taken the position before this Court that the patent and non-patent

claims involve information that is both patented and unpatented.  (Nippon Br. at 25 citing

POSCO letter to the Court dated November 16, 2012.)

The Court is not persuaded by POSCO's argument that a stay is appropriate simply

16

because all of the claims, patent and non-patent, share a "common nucleus of operative facts" associated with GOES-related technology—a subject they contend is before the PTO.  As mentioned earlier, the patent claims will not be stayed; therefore, the basis for staying the non-patent claims evaporates.  Also, the argument ignores the fact that the legal theories underlying the non-patent claims differ substantially from the patent claims and will proceed regardless of whether the patents are upheld or not—e.g., Nippon's unfair competition claim and its false advertising claims do not depend on the validity of a patent in any way.  As Nippon explains it, the false advertising claim has to do with what POSCO says about its GOES product, representations Nippon claims are false and would be false regardless of the state of its patents following reexamination. The non-patent claims do not depend on the continued validity of the patents and are based on different legal theories.  Therefore, there is no basis to stay these claims.  See, e.g., CCP Sys., 2010 WL 5080570, at *4-5; In re Laughlin Prods., Inc., 265 F. Supp. 2d 525, 538 (E.D. Pa. 2003) (declining to stay non-patent claims, including claims of unfair competition, when claims were "entirely separate from the patent invalidity and non-infringement issues."). Since there is no basis to stay these non-patent claims *regardless* of the patent claims in the case, and since the claims will likely involve at least some overlapping discovery, it would seem that judicial economy would actually benefit from proceeding with all claims in the case now.

In sum, Nippon has shown the possibility of real prejudice from a stay.  Conversely, POSCO has not shown any hardship or inequity as a result of proceeding with this case at this time.  Therefore, this factor weighs against a stay.

**2.   Simplification of the Issues**

Reexamination will not markedly simplify the issues in this case.  It may slightly alter

17

them but it will not simplify them.  First, as mentioned previously, two claims in the '260 patent have already been confirmed by the PTO.  These claims allege willful infringement.  Thus, the Court will have to perform an infringement analysis in this case regardless of reexamination.

Second, the reexamination proceedings taking place with respect to the '972 patent will not be binding on POSCO.  More specifically, the '972 patent was submitted for *"ex-parte* reexamination."  *Ex-parte* reexamination is "the form of reexamination less likely to simplify the issues" because the requesting party is not estopped from later asserting, in civil litigation, all of its invalidity arguments, even those rejected by the USPTO.  <u>Anascape Ltd. v. Microsoft Corp.</u>, 475 F. Supp. 2d 612, 616 (E.D. Tex. 2007).  POSCO has asserted 41 invalidity theories, and the PTO has already rejected some of its prior art references.  (PDS at 54.)  Thus, at least with respect to the '972 patent, the value of reexamination may be diminished.  <u>See, e.g.</u>, <u>United Pet Group, Inc. v. MiracleCorp Prod.</u>, 2012 WL 2458539, at *2 (E.D. Mo. June 27, 2012).

Finally, practically speaking, a stay will not simplify or advance resolution of this feud. First, there are non-patent claims for which there is absolutely no basis for a stay.  Second, the whole concept of "simplification of the issues" is somewhat imaginary here given the nature of the dispute and the vigor with which the parties have pursued it in three different forums around the world.  This case is a clash that involves allegations of unfair competition and espionage presented through the prism of a patent-focused dispute.  While the USPTO rejecting some claims could theoretically narrow the scope of the patents in dispute, the reality (based on what the Court has seen thus far) is that this litigation armageddon.  The ever-present disputes, the parties' acrimonious relationship, the other lawsuits pending in foreign countries, and the Court's personal experience with this case all suggest that this case will remain contentious, complex and

18

unresolved regardless of what emerges from reexamination. Simply put, judicial finality appears

to be the only solution.

3.    **The Stage of The Proceedings**

The case commenced nearly a year ago. All fact discovery is supposed to be complete in

four months. A Special Master has been appointed, has held many meetings with counsel, and

has issued a Report on discovery issues. Likewise, Nippon's papers state that hundreds of

thousands of documents have been exchanged and validity and invalidity contentions have been

served. In contrast, the parties have no idea where the reexamination proceedings stand or when

they will be complete. While statistics cited by Nippon suggest that a civil case in this district is

usually complete within two years, reexamination proceedings can take three years or longer.

(PDS at 58.) While there may be additional discovery extensions sought, the point is the case is

not in its infancy and has progressed further than the reexamination proceedings. This weighs

against a stay. See, e.g., JuxtaComm-Texas Software v. Lanier Parking, 2011 WL 3322554, at *2

(E.D. Tex. Aug. 2011) ("the proper inquiry considers the stage of the litigation in comparison to

the stage of the PTO examination); Cooper Notification, 2010 WL 5149351, at *3 ("Turning to

the status of the litigation, this case is still at a relatively early point, but so, too, is the

reexamination . . This conclusion is all the more compelling, in the Court's view, given the even

earlier stage of the reexamination.").[10]

---

[10] Interestingly, neither of the parties raise the specter and potential consequences of federal "sequestration"—the across the board budget cuts imposed on the federal government by statute. This could conceivably affect the time sensitive component of a stay application. The effect of sequestration is unknown. It could be argued that the process could conceivably slow down federal action, legal and executive. But who knows? Under the peculiar facts of this case (and while it may appear counterintuitive) the looming sequestration further supports no delay of the proceedings. This is so because of the stakes and the fact that anything short of final judicial

4.    __Additional Considerations__

The Court does not find that POSCO resorted to reexamination a tactical tool to delay the case.  However, it is fair to say that circumstances exist which, if interpreted a certain way, could suggest that the reexaminations were sought in the context of the larger picture of a worldwide dispute in which either party will do whatever it can gain real or even perceived advantage against the other.

POSCO filed its reexamination requests on the four patents less than a week before the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), replaced the *inter partes* reexamination process with *inter partes* review proceedings.   This is significant in light of the fact that *inter partes* review proceedings are required, by statute, to be completed within 12 months (with a six month extension available).  See 35 U.S.C. § 316(a)(11). Conversely, slower, more cumbersome *inter partes* reexamination proceedings routinely exceed three years.  (Vincent Decl., Ex. 13.)  It is fair to wonder if the true intent was to receive the USPTO's expert opinion as quickly as possible, why would POSCO not have waited the five additional days to take advantage of the newer and more efficient method of *inter partes* review? These circumstances could fairly suggest the existence of ulterior motives that could further weigh against a stay.  See, e.g., Anascape, 475 F. Supp. 2d at 615 (reexamination should not be used as a "tactical tool to delay a case and impose costs, with no real expectation that any controversy will be resolved"); Brass Smith, 2010 WL 4444717, at *3 (commenting that courts will deny stay where "the reexamination filing was done as a tactic to delay the proceedings"); BorgWarner, Inc. v. Honeywell Int'l, Inc., 2008 WL 274818, at *2 (W.D.N.C. July 7, 2008) (finding defendant's

determination is unlikely to resolve the dispute.  The case should proceed forthwith.

motion was "timed so as to provide a tactical advantage to the Defendant" where it waited to file for reexamination until after the court entered its Case Management Order).

<u>**CONCLUSION**</u>

The majority of factors weigh against staying this case.  Nippon has demonstrated the real possibility of prejudice from a stay.  Conversely, POSCO has shown no undue burden from proceeding with the case in full.  Any benefit the Court would reap from a complete USPTO reexamination may not come for years, is speculative, and would likely not, in all events, resolve all of the claims in the case.  And finally, this case has progressed well into discovery and is being closely managed by the Court.  For these reasons, and all of the reasons stated above, Defendants' motion to stay this case pending reexamination is **DENIED** in its entirety.  An appropriate order will be entered.

<u>**s/Mark Falk**</u>
**MARK FALK**
**United States Magistrate Judge**

**DATED: May 2, 2013**