RECEIVED

IN THE UNITED STATES DISTRICT COURT JUL 1 0 2014
FOR THE DISTRICT OF NEW JERSEY 8:00
                                    WILLIAM T. WALSH, CLERK

.......................................................
                                          :
NIPPON STEEL & SUMITOMO METAL :        Civil Action No. 12-2429 (SLC) (CLW)
CORPORATION,                              :
                                          :
        Plaintiff,                        :
                                          :            **LETTER OPINION**
vs.                                       :
                                          :
POSCO and POSCO AMERICA                   :
CORPORATION,                              :
                                          :
        Defendants.                       :
                                          :
.......................................................:

        The final two fact discovery motions were discussed at a hearing held on June 17,

2014 at Gibbons, P.C. Two motions that the Honorable Stanley L. Chesler assigned to the

undersigned were also discussed, but they will be the subject of a separate Letter Opinion.

        There is no need to repeat the nature of this dispute, as it has been addressed in

previous opinions and Orders.

                    *              *              *

**POSCO'S MOTION TO COMPEL NIPPON TO DESIGNATE A WITNESS OR
WITNESSES TO TESTIFY PURSUANT TO Fed. R. Civ. P. 30(b)(6) REGARDING
CORPORATE DEPOSITION TOPICS 70 AND 71.**

        Topic 70 addressed "Nippon's consideration, examination, testing and/or use of

AK Steel's induction heating technology or rapid heating technology."  Topic 71 addressed

"Nippon's violations or alleged violations of U.S. Anti-Dumping Laws and Regulations,

including without limitation, allegations of anti-dumping against Nippon made by AK Steel

and/or ATI."

POSCO avers that the Topics themselves "impact the **validity**, **enforceability**, and **ownership of the '644 patent**, as well as Nippon's **damages** claim." POSCO notes that it served notices for these corporate deposition Topics in September 2012, before the scheduled close of fact discovery. It states that the depositions as to these Topics were delayed by Nippon's refusal to produce documents concerning the subject matter of those Topics. It was only "recently," that Nippon announced that it completed its production of those documents.

In response to POSCO's motion, Nippon argues that POSCO served these requests on September 18, 2013 and that they were "untimely and unwarranted." Nippon posits that other Rule 30(b)(6) Topics covered "identical subject matter" and noted that it objected to producing the discovery at issue in a response dated October 18, 2013.

Nippon's response to Topic No.: 70 was" Nippon incorporates each above noted General Objection as though fully set forth in response to this Topic. Nippon further objects to this Topic to the extent that it seeks disclosure of confidential communications or information protected by the attorney/client privilege, attorney work product doctrine or other privilege, which protections Nippon does not waive.

Nippon also objects to this Topic as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and as imposing obligations beyond those required under the rules. In particular, this Topic is not bounded to time periods or issues calculated to lead to the discovery of relevant evidence, and the relevance of testimony regarding AK Steel to the parties' claims or defenses is not clear - there is no claim or defense in this case to which AK Steel's heating techniques are relevant.

Nippon further objects that it has already provided in the United States corporate deponents, and expended resources accommodating their depositions, when such persons may

2

have knowledge falling within this Topic. POSCO's service of this Topic after those employees have testified purports to require the same person or persons to return to the United States and sit for a second deposition, which is unduly burdensome and not required under the Rules. In fact, POSCO has already questioned Nippon's corporate deponents on matters falling within this Topic. POSCO is not entitled to a second opportunity to redo or duplicate that discovery.

In light of the above objections, Nippon will not designate a person to provide testimony concerning AK Steel's technology."

Nippon's response to Topic No. 71 was identical to its response to Topic 70.

Nippon takes the position that on the same date, October 18, 2013, that it filed its response, POSCO moved to compel certain documents but neither sought nor mentioned Rule 30(b)(6) with regard to Topic 70. However, what Nippon does not state is that it filed its objections at 10:15 p.m. on October 18, 2013; thus, how POSCO could have included same in its motion filed earlier on that day is a mystery. Of course, POSCO would have needed time to digest that response even if the reply had been served earlier in the day and before it filed its motion.

Nippon also notes that on December 12, 2013 POSCO moved to compel certain documents, but "again, did not mention…Topic 71." However, what Nippon does not state is the December 12 motion concerned Requests for Production; and it did not address the deposition Topics. POSCO responds that the issue *sub judice* "was not ripe…to pursue until Nippon produced documents relating to the noticed Topics." To that end, POSCO produced the following interesting timelines:

> 1. POSCO served corporate Topic 70 and 71 on **September 18, 2013** before the close of fact discovery;

2. Fact discovery was extended at Nippon's request, and it was recognized that POSCO was entitled to produce discovery that had already been noticed;

3. Nippon began producing documents relating to Topic 70 and 71 in **January 2014**;

4. Nippon did not finish producing documents relating to these Topics until **March 2014**;

5. After receiving confirmation that Nippon had produced all documents relating to the two Topics, POSCO promptly sought corporate testimony;

6. POSCO filed its motion to compel testimony on Topic 70 and 71 on **April 9, 2013** well before the **May 5, 2014** deadline to file discovery motions.

Curiously, but perhaps not in the context of this case, when the "shoe was on the other foot," Nippon similarly moved with regard to what it deemed was POSCO's Rule 30(b)(6) deficiencies. This was discussed in the Letter Opinion dated June 5, 2014.

There has been no secret that Topics 70 and 71 have been long pursued areas of interest by POSCO. The Topics were served before fact discovery closed. The motion itself was filed on April 9, 2014, well before the May 5, 2014 deadline to file fact discovery motions. Thus Nippon's allegations of untimeliness are ill founded.

That leaves Nippon's only remaining theory that the Topics were "unwarranted. However an allegation in defense to supplying same that it is "unwarranted" is without authority. There is no need to regurgitate "Hornbook" law concerning the liberality of our broad discovery rules. Nippon's entire opposition is based on conclusory positions without an acknowledgement of what is the acceptable scope and purpose of discovery. Additionally Nippon objects to the

4

relief POSCO is seeking because it "would require Nippon to re-produce witnesses previously deposed," but it had no such concern when it moved to compel POSCO to do the very same thing in the aforementioned Rule 30(b)(6) motion it made.

The temptation here is to simply employ a common sense conclusion that "what is good for the goose is good for the gander." However, POSCO has made a motion in a timely fashion for information clearly calculated to lead to the discovery of admissible evidence, and there are no claims of privilege. Merit is found in POSCO's motion and it is granted. Whether the information, in fact, turns out to be "relevant," in the trial sense of the word, must abide rulings in the trial itself.

An issue still remains as to whether the information sought is limited to "induction heating" or includes "rapid heating technology." Although Topic 70 referred to both induction heating and rapid heating technology, it would appear that POSCO is most interested in the "induction heating" because, as POSCO's attorney noted at the November 26, 2013 hearing, the ('644 patent) consisted of only induction heating. (T198, L11; T130, L3-5; T132, L21-T133, L6). In fact POSCO represented on that date that what it wanted related to "just induction heating." (T139, L13-15). All of this was said despite the verbiage POSCO had previously employed regarding the Topic in question.

In fact at the June 17, 2014 hearing, POSCO's counsel noted that at the November hearing the Topic was "with respect to induction heating" (T7, L15-16) and that "induction heating versus rapid heating…is a distinction of no import…(i)t's a distinction without difference." (T10, L14-22). If that is so, it is uncertain why we are parsing this language, but as POSCO specifically limited its request to induction heating as noted above and as the '644 patent only claims "induction heating," questions on that Topic are to be limited to "induction heating."

\*          \*          \*

## NIPPON'S MOTION TO COMPEL POSCO TO PRODUCE DOCUMENTS THAT SEOK-JU LEE MAY HAVE PRODUCED IN A CIVIL ACTION BROUGHT BY POSCO IN KOREA.

On January 7, 2014 an Order was entered that referred to the subject matter of this

motion which was discussed at a hearing between the parties and the undersigned on November

26, 2013. Paragraph Four of that Order stated:

> Nippon sought to compel documents and communications related to or obtained during legal proceedings in Korea involving former POSCO employee Ms. Seok-Ju Lee pursuant to Nippon Request for Production Nos. 109-111, and 114-116.  After extensive discussions regarding the subject matter of these requests, Nippon's counsel confirmed that it is seeking through this motion documents relating to Nippon's technology that Mr. Lee may have produced in the civil litigation brought by POSCO against Mr. Lee and in the Korean criminal proceedings against Mr. Lee. POSCO agreed to search for and produce such non-privileged documents. This request is therefore GRANTED in part, in that POSCO agreed to and will undertake a search of its records and produce any documents that relate to Nippon technology that Mr. Lee may have produced in a civil action brought by POSCO against Mr. Lee and in Korean criminal proceedings against Mr. Lee.

On the following day, January 8, 2014, in a letter to counsel the undersigned

addressed a dispute concerning what that paragraph meant:

> With regard to paragraph 4, there seems to be a dispute as to what records Nippon is seeking that Mr. Lee may have produced. In its January 6 letter, Nippon indicated that they were seeking records from both the civil litigation and in the criminal proceedings against him. A review of the transcript of the proceedings reveals that Nippon was seeking copies of records and communications regarding a criminal proceeding against him (T63, L16-23), as well as records in POSCO's possession concerning the civil lawsuit it filed against Mr. Lee (T64, L9-14). Additionally, it was stressed at that hearing that Nippon was only seeking records in POSCO's possession and control (T64, L15-24).

6

POSCO through Mr. Suh, indicated it did not understand how the information from the criminal proceeding was relevant to the case *sub judice* (T69, L6-13). However, Mr. Reiter seemed to "clarify" the request as one for documents from the civil litigation at pages T76, L15-T77, L12.

Therefore, it is understandable that POSCO's attorneys may have assumed that Nippon was no longer looking for, or was not seeking, records from the Korean criminal proceeding. However, clearly insofar as POSCO's Litigation Department may have any record not under a Protective Order from the Korean or Japanese Courts that are documents provided by Mr. Lee concerning either litigation, it is my ruling that they are discoverable in this case. Nippon was looking for those documents that were used in either litigation at the beginning of this discussion.

On February 9, 2014 POSCO's counsel wrote to Nippon's counsel stating, "(w)e write in response to your letter of February 11, 2014, regarding the Special Master's January 7 Order. With respect to documents from the criminal and civil cases against Mr. Seok-Ju Lee in Korea, POSCO does not have access to any documents from these cases. Therefore, POSCO will not be producing any additional documents from the criminal and civil cases against Mr. Seok-Ju Lee.

In its Letter Brief in Opposition to the instant motion, POSCO noted that it had searched "the records in its possession, custody and control" (and) "found no responsive documents." POSCO obviously relies on this verbiage in defense of its position in opposition to this motion, as well as its claim that it "does not have access" to the documents in question.

It is worthwhile to note that when Nippon originally moved to compel production of documents POSCO may have received from Mr. Lee in the Korean litigations, POSCO took the position that same was "unrelated" to the case *sub judice* [1]. The proposed Order as drafted by Nippon stated "POSCO is to produce non-privileged responsive documents in its or its

---

[1] Mr. Lee is a former POSCO employee who was criminally convicted in Korea for theft of POSCO's trade secrets concerning GOES Technology. Thereafter, POSCO sued Mr. Lee civilly.

domestic or foreign lawyers possession, custody or control." The aforementioned dispute over the Order's language thereafter arose, and the January 8, 2014 letter was written. In support of its opposition, POSCO had decided to use the words "insofar as POSCO's, Litigation Department may have any record not under a Protective Order from the Korean or Japanese Courts that are documents provided by Mr. Lee concerning either litigation, it is my ruling they are discoverable in this case." POSCO argues that it fully complied with the Order in question.

In its Brief in Opposition, POSCO argues that Nippon is attempting to "broaden the scope of the Order and compel POSCO to produce documents not found in POSCO's records (and therefore not within POSCO's possession or custody) and that are outside of its control." What this suggests is that POSCO is resisting producing records that may be in the possession of litigation counsel who represented it in Korea as technically not in the control of the corporation.

However, POSCO also states that its "outside foreign counsel do not have *complete control* over the records from the civil and criminal cases involving Mr. Lee," as apparently its Korean attorneys "accessed a subset of records from the criminal and civil proceedings…which **apparently** are held by the Daegu District Prosecutor's Office and the Daegu District Court." (POSCO letter, May 19, 2014, paragraph 3; bold lettering mine). Thus it concludes the records are not even in the control of POSCO's "outside counsel," let alone the control of POSCO itself.

This situation was undoubtedly partly caused by the imprecise verbiage previously employed by the undersigned. However, the question that attends this dispute is whether POSCO, the corporation itself or any part thereof, has possession of the records in question in a legal sense. If it does not, does its Korean counsel have possession of the records in question or a copy thereof? If so, must those records be supplied?

8

In support of its motion, Nippon notes that a January 2014 brief POSCO's Korean counsel submitted in "the Korean litigation between POSCO and Nippon" stated that "its legal representative had examined the documents in the Lee civil and criminal litigation to determine if certain documents claimed by Mr. Lee to contain Nippon trade secrets were present." The brief apparently "further explained that, through this exhibit POSCO's legal representative determined that seventeen documents from the Lee litigation records contained information concerning Nippon's technology." Then the brief is said to have noted that "POSCO's 'legal representative mimeograph(ed)' documents from both the civil and criminal Korean Courts." Thus, if the statements made in that brief by POSCO are accurate, clearly at times POSCO's "legal representative" had at least seventeen documents that Nippon argues would be responsive to the Order of January 7, 2014. Furthermore, in a brief dated April 2, 2014 in the Korean litigation, POSCO stated that Lee's counsel in the civil case after copying the criminal litigation records submitted them "as evidence in the civil litigation." Nippon argues, therefore, that POSCO does, in fact, possess responsive documents.

Several issues are involved when examining that conclusion. The first is that assuming that is true, does the verbiage or intent of the January 7 Order and the January 8 "clarifying" letter absolve POSCO from having to produce any such records? To that end, the purpose of Nippon's original Motion will be examined. Second, if POSCO's Korean litigation counsel has possession of such records, does that mean that POSCO has "possession, custody or control" of same? The third question is, if POSCO was found to have control over same, do the records still exist with their retained counsel. If not there are implications that may need to be addressed at a later date.

There is an unrelenting tendency in this case, as has been noted many times before, for these parties to parse and grammaticize verbiage when it is believed to be in the best interest of each. However, a review of the hearing transcript for November 26, 2013 regarding the discussion on the subject (see T63, L9-T79, L3) demonstrates what Nippon was seeking were documents "that were within POSCO's possession, custody and control...whatever communication or submissions or pleadings that are in POSCO possession regarding...these two litigation proceedings...." (T64, L15-24).

Before making this request of POSCO, Nippon did seek to obtain the entire Korean record from the Korean Court but was denied access to same. Nippon did not, however, seek to obtain any records of the civil proceedings (T66, L1-12).[2] Nippon made it clear that because the Korean Court noted that "for some reason" POSCO had Nippon technology in its possession, that they are seeking copies of those documents. If true, relevance is probably not arguable but discoverability is clearly not arguable.

Nippon noted it was only asking POSCO to produce documents in their possession (T76, L4-7) that had been referenced by the Korean Courts (T76, L15-23). Nippon confirmed that it was "seeking from POSCO documents that Lee may have produced in the litigation brought by POSCO against Lee that related to Nippon technology." (T77, L13-18).

Nippon made it clear that it was asking for "litigation records...not...corporate records"...that either "the Litigation Department **OR** their lawyers have (in) these files that relate to that litigation." (T78, L2-10; emphasis added). Thereafter, POSCO's counsel asked for a recess and upon returning said, "we can undertake the search and see if we've got any information from Mr. Lee regarding the civil action referred to by counsel before the break. We

---

[2] POSCO questioned the relevance of any criminal records (T69, L6-10); however as has been repeatedly stated in the case at bar that does not mean that they are not discoverable as having a potential to lead to the discovery of admissible evidence.

will see what we have." (T78, L21-25). To which the undersigned noted, "(y)ou might have to check with counsel in that case…" (T79, L1-2).

Reviewing the "issues" mentioned above, it is clear whatever the language of the Order and any impreciseness of the "clarifying" language on January 8, Nippon was seeking records that may have been in the possession of retained litigation counsel as it noted and the undersigned emphasized. It is also clear that POSCO agreed to look for information referred to by Nippon's counsel, which clearly referenced records from the litigation in Korea that is, or was, in the possession of POSCO's counsel there. While POSCO's written response chooses to limit its production to what is in its "possession, custody and control" to excuse it from checking with litigation counsel in Korea that was not what Nippon was seeking nor what the Order intended. Nor was the discussion so limited as can be seen above.

It is worthwhile to note at this juncture that this is not a situation where a party suspects that its adversary has or should have the requested documents based on an inherent distrust that the parties have for each other. It is obvious that these documents exist, or existed, as they were referenced in POSCO's briefs in Korea and, at least at sometime, were in the possession of POSCO's outside legal counsel retained there. Several cases have discussed the issue of whether such records must be produced.

In defense of this motion POSCO posits that Nippon bears the burden of establishing that it has control of the documents in question, citing *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991). It notes that "control" means that a party has the legal right, authority or ability to obtain documents *on demand*." Id. POSCO argues that the fact its Korean outside counsel may have had access to the documents "does not come close to placing the documents in POSCO's possession, custody or control."

11

In reviewing the issue, it must be assumed that Korean counsel, who had

possession of the records, still has them in its possession because if not other issues arise.

POSCO has applied a restrictive concept of "possession, custody or control." *Camden Iron &*

*Metal, Inc.*, *supra* is not instructive here, as it dealt with the question of whether a subsidiary had

"control" of certain documents in possession of its parent corporation. However, other cases

discuss the client/attorney relationship. In fact, the concept of "possession" was discussed in

detail in a relevant context in the case of *MTB Bank v. Federal Armored Express, Inc.*, 1998 WL

43125 (S.D.N.Y. 1998). That case noted in pertinent part that:

> Under Fed. R. Civ. P. 34, which governs the production of
> documents during discovery, the clear rule is that documents in the
> possession of a party's *current or former* counsel are deemed to be
> within that party's "possession, custody and control." See, e.g.
> *Variable-Parameter Fix. Dev. Corp. v. Morpheus Lights, Inc.*,
> 1994 U.S. Dist. LEXIS 11185, No. 90 Civ. 5593, 1994 WL
> 419830, at *6 (S.D.N.Y. Aug. 10, 1994) (finding that party had
> right of access to documents in possession of former counsel)...in
> this Circuit, the term "control" is construed broadly (citations
> omitted).  Specifically, control is defined as "the legal right,
> authority or ability to obtain upon demand documents in the
> possession of another." (citation omitted).

The court also noted that "(t)he central questions for the Court, then, is whether

the (document at issue therein) was in the "possession" of the defendant...(which) was located in

the files of the defendants outside corporate counsel at the time of the...motion. The answer, the

court finds is unequivocal yes." The case of *Bank of New York v. Meridien Biao Bank Tanz.*

*Ltd.*, 171 F.R.D. 135, 147-54 (S.D.N.Y. 1997) imposed a continuing obligation for a party to

inquire about responsive documents that may be in the possession of its managing agents,

accountants and **lawyers**. In the *Variable-Parameter Fix. Dev. Corp., supra* case, the court

imposed monetary and evidentiary sanctions against a party who failed to produce documents

that had been in possession of its former counsel even though the documents did not originate from the defendant (which does not appear to be an issue here).

There are situations when such records may not have to be produced. While POSCO has not argued it in its opposition to this motion, obviously if there a viable claim of privilege the records need not be produced. Additionally POSCO notes that the case of *Ontario, Inc. v. Auto Ent., Inc.*, 205 F.R.D. 195 (E.D. Mi 2000) held that under the circumstances there the party was not required to produce documents received by outside litigation counsel. However, the records were not produced because a party took the position that such records were not in the possession, custody or control of it. The party's criminal defense attorney **had accepted an ethical and legal obligation** to maintain possession and control of such documents and not disseminate such documents or use them except for what was strictly necessary for the defense of the criminal proceedings against his client.

In that case the records were provided to the attorneys by the state (therein known as the "Crown" in Canada) specifically for the defense of a Canadian criminal proceeding. The records were provided with the understanding that they not be released to third-parties, and therefore, the attorney had an ethical obligation not to produce them. Such has not been established to be the situation *sub judice*.[3]

After thoroughly reviewing each party's submissions on this issue, the parties were given an opportunity to speak to the positions on June 17, 2014 (cf T27, L17-T40, L1). At that hearing it was confirmed that POSCO's search was limited to records it maintained in its "in-house legal department in its corporate offices." (T28, L5-16), despite that the November 26, 2013 record clearly contemplated it also check with its Korean counsel. It was admitted that

---

[3] Up to this point, the instant opinion was based on papers filed by the parties regarding the issue. As will be seen the basis of POSCO's opposition to this motion radically changed at the June 17, 2014 hearing. That change in its position will be discussed, infra.

13

POSCO's "outside counsel...actually accessed the documents...and made copies of same," (T28, L18-22) and for the first time, not a position taken in their written submissions, POSCO's attorney stated, "my understanding is because of the fact that their representation is that under their obligations, ethical obligations and under the limitations from the court system there, they are not authorized to give those out for purposes beyond their use in the case." (T29, L10-16).

Clearly POSCO, although mentioning the *Ontario, Inc.* case in its papers, did not rely on this alleged "obligation" in its papers. Undoubtedly, if it was taking that position it would have emphasized it and would have submitted support for it, as it has attempted to do in its post-hearing submission. Tellingly, despite the alleged merits of this position, first raised at the hearing, POSCO did not only not emphasize it or speak to it regarding the case *sub judice*, it did not even seek a Protective Order on the basis of it insulating it from having to produce the documents.

The bottom line is this:

1. POSCO's Korean attorney admittedly has the documents;

2. POSCO's attorneys allegedly refused to produce them to any third-party, apparently taking the position that POSCO is such a third-party;

3. In refusing to produce the documents POSCO's attorneys rely on a certification of its Korean counsel which states:

   a) it has "legal obligations" not to permit POSCO itself access to the documents;

   b) unspecified, explained or provided restrictions had been "placed on third-party access to the Lee documents by the "Korean Supreme Court;"

14

        c) that if the documents are forwarded by POSCO's attorneys to POSCO "it **may** constitute violation of Korean criminal code and ethics rules;

        d) that the documents **"may contain information** that is deemed as secrets that *relevant* **Korean laws** prohibit disclosure thereof;" and

        e) even providing the records to POSCO, its client, "constitutes" violations of this obligation under the "occupational disclosure of other's secrets" provision as well as relevant ethic rules.

Putting aside the inescapable feeling that if all this had any merit, POSCO's U.S. attorney's would have made it a central part of its opposition to this motion (or at least mentioned it in the papers), this presentation does not "mirror" the situation in the *Ontario, Inc.* case.

That case involved a civil Complaint which alleged various RICO assertions, *inter alia*, against defendants. Defendants filed a "Cross-Complaint" in Canada asserting similar claims against plaintiffs and sought to obtain from plaintiffs copies of prosecution reports that plaintiff's criminal attorneys had obtained. These reports included summaries of unsworn witness statements and forensic reports. Those all had been provided to plaintiff's defense counsel when it was defending a Canadian criminal case against the now civil plaintiffs.

Those reports were obviously provided as part of criminal discovery and were entitled to the protections thereof, and in the possession of plaintiff's criminal attorney not in plaintiff civil attorney's possession. That criminal defense attorney reviewed those records under the express condition that they not be released to third-parties, and as such, plaintiff's criminal defense attorney felt ethically obligated not to do so.

15

There is no similar expressed condition averred here. In fact, the opposition is based upon hearsay, possibilities, equivocations (and supposition that: the documents) "may contain information," "may constitute violations of Korean criminal code and ethics rules." The opposition refers to Articles of the Korean Criminal Act by section and generally. Not only is each such reference hearsay, its reliability is unconfirmable without being provided with the entire text upon which it is based.

At this juncture, in fact at the time of its written response and even at the June 17, 2014 hearing, more is and was required. The fact that this position apparently was not raised during the parties "meet and confer" on this issue nor in its moving papers is indeed telling. If Korean law and procedure deprived POSCO access to its own documents and documents in the possession of its retained attorneys that issued should have been succinctly, clearly and specifically addressed without resort to equivocations and possibilities.

According to a reply dated June 23, 2014 to POSCO's response of June 20, 2014, Nippon's attorneys noted:

> In a December 24, 2009 Judgment of the Daegu District Court, pertaining to Nippon's application to inspect the Lee litigation records, the Korean Court found that POSCO was the "author or the legitimate holder of such documents (and) can be deemed to have a direct interest with regard to the disclosure of such information, and thus, the aforesaid *records are subject to the consent of POSCO*."

> In that same December 24, 2009 Judgment, the Korean Court further found that even as to the records that appear to have originated from Nippon, those records "are those that had been *acquired or managed by POSCO* regardless of how they were acquired or managed by POSCO." Thereafter, POSCO was found to have "interest in the records even though such records did not contain statements of persons related to POSCO and such records were not prepared and submitted by POSCO."

16

POSCO used these findings, to represent to the Korean Court that these records belong to POSCO, and in an April 2, 2014 Brief submitted by POSCO to the Korean Court noted "Nippon was precluded from seeing the Lee documents because the documents contained "(POSCO's) business secrets;" with the exception of certain documents to which Nippon was the original owner; and that the Korean Supreme Court rejected Nippon's request for its corporate representatives to exam the lead documents because "disclosing the criminal litigation records of (Mr. Lee) would result in severe infringement on the business secrets of POSCO."[4]

In a letter dated June 24 and received after the drafting of this Opinion had begun POSCO noted that the Korean attorneys it retained "made clear that the documents would not be shared with POSCO. Knowing that turning these documents over to POSCO will result in their production to Nippon…" The Korean lawyer, therefore, does not say that POSCO cannot receive these documents. He only seems to be concerned about what might happen to same if given to POSCO. Putting aside the validity or value of POSCO's Korean's attorneys' supposition as is to what may happen to said documents, the inescapable conclusion is that POSCO is deemed to be in possession of the documents under the relevant case noted above. What happens to those documents in this case is for a U.S. Court to decide, not Korean counsel.

It is apparent from each party's submissions that these records could contain important information germane to the case at bar. In fact, the aforementioned case law holds that in this jurisdiction these records are considered to be in POSCO's possession. Nippon's moving papers, and more importantly, the discussions at the November 26, 2013 hearing clearly reflect what Nippon was seeking. The record also clearly indicates that even though the documents may not have been in POSCO's corporate possession *per se* they were in the possession of its outside counsel. Case law mandates that for Rule 34 purposes the records that were in POSCO's attorney's possession should be produced. It defies common sense that a party cannot obtain

---

[4] Of course, the discovery Confidentiality Order here would protect POSCO from such danger and limit the use of these records in the instant litigation.

records in the possession of its attorney/agent upon demand. If after the inevitable appeal,

POSCO is ordered to provide the records and does not an adverse inference charge will also be

inevitable.

The appropriate Order should be submitted by the prevailing parties to the above

motions as contemplated by Local Civil Rule 7.1(c).

The Hon. William L'E. Wertheimer, (Ret.)
Special Discovery Master

Dated:  June 27, 2014

G:\13773\13773-PLD-WLW-LTR OPINION 2-ML-06-09-2014.doc

18